CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAR 26 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CARLOS EDWARDS, | CASE NO. 5:11CV00062 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL ASTRUE<br>Commissioner of Social Security, | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | |

This challenge to the Commissioner's final decision adopting the Administrative Law Judge's May 12, 2010 decision to deny plaintiff's August 29, 2007 application for Child Disability Benefits, is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct proceedings and render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the Commissioner's motion for summary judgment, GRANTING plaintiff's motion for summary judgment, REVERSING the Commissioner's final decision, and ENTERING final judgment in favor of plaintiff.

In a decision dated May 12, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since December 15, 1989, his alleged date of disability onset, and had not attained 22 years of age by that date.[1] (R. 15.) The Law

---

[1] A claimant may be granted disabled child's insurance benefits if the claimant is 18 years or older and has a disability that began before obtaining 22 years of age. 20 C.F.R. §

Judge determined plaintiff's borderline intellectual functioning and attention deficit hyperactivity disorder ("ADHD") were severe impairments.[2] (R. 15.) He also concluded that plaintiff does not suffer an impairment or combination of impairments which meets or equals a listed impairment. (R. 15-17.) Giving little or no weight to the testimony of Sally Edwards, plaintiff's mother, and Debbie Peterson, plaintiff's rehabilitation counselor, the Law Judge further found that plaintiff maintains the residual functional capacity ("RFC") to perform unskilled light work, with some limitations.[3] (R. 17-19; 25-44.)

Present and testifying at the hearing was James E. Ganoe, a vocational expert ("VE"). (R. 44-48.) When asked to consider hypothetical work capacities posed solely by the Law Judge, the VE opined that there were jobs available to a person of plaintiff's abilities and impairments as a laundry worker and garment sorter. (R. 44-45.) However, when asked to consider that the individual would need constant supervision, consistent assistance, or regular job coaching, and to consider Ms. Peterson's vocational rehabilitation testimony as credible, the VE opined that no jobs would be available to the plaintiff. (R. 46-47.) Relying on the VE's responses to his hypothetical questions based on the RFC he found, the Law Judge concluded that jobs were available to the plaintiff, and that plaintiff was not disabled under the Act. (R. 20.)

---

404.350(a)(5). A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d).

[2] The Law Judge acknowledges that plaintiff has fetal alcohol syndrome (R. 17.), though he does not specifically address it in his decision.

[3] The Law Judge found that plaintiff could understand, remember, and carry out simple instructions and perform jobs which do not entail more than minimal changes in a work setting or require handling money. (R. 18.)

2

Plaintiff appealed the Law Judge's May 12, 2010 decision to the Appeals Council. (R. 1-2.) Plaintiff submitted additional evidence on administrative appeal.[4] In a June 24, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1.) The Appeals council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued, briefs were filed, and oral argument was held by telephone on February 29, 2012.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642. When the Appeals Council considers additional evidence not submitted before the Law Judge and adds it to the

---

[4] The additional evidence is a "Summary of Performance" from Page County Public Schools, dated June 8, 2010. It details plaintiff's academic and functional performance (vocational and independent living), sets recommendations to assist plaintiff in meeting postsecondary goals, and serves as an addendum to plaintiff's most recent Individualized Education Program. (R. 534.) Though this report is dated after the hearing before the Law Judge, it refers to some events and plaintiff's impairments and performance before the hearing took place. More importantly, the Appeals Council incorporated the report into the record, and so it shall be considered along with the rest of the record in determining whether the Commissioner's decision is supported by substantial evidence.

record, reviewing courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In a brief in support of his motion for summary judgment, and in oral argument before the undersigned, plaintiff contends that the Commissioner's finding that plaintiff possesses the capacity to perform light work is not supported by substantial evidence. Plaintiff asserts that the Law Judge ignored or discredited the evidence contained in plaintiff's medical, educational, and vocational records, which, when read collectively, provide an accurate longitudinal view of the effects of plaintiff's mental impairments. (Dkt. No. 13, at 9.) Plaintiff highlights that applications by mentally impaired claimants must be reviewed on the basis of whether the claimant can maintain necessary work abilities on a sustained basis. (Dkt. No. 13, at 10; citing, SSR 85-15, Mental Impairments.) He asserts that despite his education and vocational training, his ability to perform many jobs is precluded by borderline intellectual functioning, persistent distractibility, and low stamina. *Id.* at 11. Plaintiff offers testimony by David C. Evans, M.D., his treating physician; Debbie Peterson, his vocational rehabilitation counselor; Jane Thompson, his special education teacher; and Sally Edwards, his mother, all of whom speak of his inability to focus, ease of being distracted, diminished work speed, inability to complete tasks, and need for constant supervision. *Id.*

Plaintiff asserts that the Law Judge gave the testimony of these individuals little or no weight, despite their being the people most directly involved in and most knowledgeable about his treatment, vocational training, and rehabilitation. *Id.* Plaintiff contends that the Law Judge relied on a portion of the vocational testimony that did not account for all of plaintiff's maladies

4

and their effects in order to support his finding that there were jobs in the national economy which plaintiff could perform. However, plaintiff offers that the Law Judge ignored the VE's further testimony that no jobs would be available where a job coach would be needed on site at all times, which assistance the clear and substantial evidence showed would be necessary. *Id.* at 11-12.

Plaintiff places special emphasis on the testimony of Ms. Peterson and argues that the Law Judge failed to give proper consideration to her evidence. He believes that, because Peterson is a qualified vocational expert, whose job is to train individuals to achieve employment and who has worked closely with plaintiff for many years, her opinions should be accorded greater weight, at least more weight than assigned by the Law Judge. *Id.* at 12. Plaintiff asserts that the Law Judge mischaracterized her evidence when he found that Ms. Peterson's testimony was inconsistent with the other evidence of record. Plaintiff believes the Law Judge misquoted Ms. Peterson when he characterized her testimony as opining that plaintiff cannot work. Rather, her testimony was to the effect that it would be difficult for plaintiff to perform in a vocational setting because plaintiff could not stay on task.[5] Plaintiff cites several examples from the record to support his argument that he has well-documented problems with distractibility and time management.[6] Plaintiff offers that his previous work experience, specifically his summer

---

[5] In this case, Peterson's testimony may have sounded to the Law Judge as though she was saying plaintiff essentially was disabled, a conclusion reserved to the Commissioner. Yet, this is the very conclusion the VE drew after considering the availability of work to a person who could not stay on task. In the undersigned's view, the finding of the VE is the only conclusion that is both reasonable and supported by substantial evidence.

[6] Plaintiff cites the testimony of Sally Edwards, plaintiff's mother, to the effect that he cannot manage money, cannot tell time, and is slow paced and easily distractible in performing tasks. (R. 32, 48-49, 263.) In addition, he refers to the questionnaire filled out by Jane Thompson, plaintiff's teacher, which indicated plaintiff has obvious to serious problems in the area of comprehension. (R. 198, 271.) Plaintiff then points to the opinion of David C. Evans, M.D., plaintiff's treating physician, which clearly reveals that plaintiff requires constant

5

forestry job in the Shenandoah National Park, involved constant supervision with no time pressures and is not a fitting comparison to the sustained and independent work described by the Law Judge. Accordingly, plaintiff contends that there is substantial evidence in the record to establish that plaintiff's impairments functionally equal a listed impairment, and that he is entitled to benefits. Plaintiff requests that as remand would only delay the receipt of benefits to which plaintiff is entitled, the Law Judge's decision should be reversed and the appropriate benefits be awarded. *Id.* at 11.

The Commissioner asserts that there is substantial evidence in support of his decision. He contends that the Law Judge gave appropriate weight to the evidence and properly concluded that the objective evidence did not support the claim made by Ms. Peterson that plaintiff could not work without constant supervision. (Dkt. No. 19, at 12.) The Commissioner points out that a school psychological examination, and other school records, revealed plaintiff could satisfactorily manage basic material, follow directions, pay attention to detail, work hard, and that his attention, concentration, and energy levels were within normal limits.[7] *Id.* at 13. The Commissioner also offers that William E. Heinlein, Ed.D, of the Woodrow Wilson Rehabilitation Center found that plaintiff demonstrated sustained effort and concentration during psychological testing. *Id.* Finally, the Commissioner points out that Ms. Peterson is not an acceptable medical source whose opinions are entitled to the weight accorded such experts.

---

supervision. (R. 511.) Finally, plaintiff points to the report from the Woodrow Wilson Rehabilitation Center which indicate plaintiff was of borderline intelligence, experienced difficulties with focus and concentration, and had poor speed, time, and money management skills. (R. 311-314, 466-473.)

[7] The Commissioner quoted plaintiff's teacher, Ms. Thompson, as reporting "most of the time, he is able to stay on task and complete assignments," and had almost no problems attending and completing tasks, with the exception of carrying out multistep instructions. (R. 199, 272.) He also relies on the statement of Sherry Smith, the school transition coordinator, who opined that plaintiff would be employable with specialized training. (R. 416-417.)

6

The Commissioner also argues that the opinion of Dr. Evans is not consistent with the record. Though Dr. Evans stated plaintiff could not work due to hyperactivity and a low IQ, the Commissioner asserts that Dr. Evan's treatment notes do not reflect such serious limitations, and notes that plaintiff was doing well on medication without changes in dosage. *Id.* at 13-14.

Further, the Commissioner contends that the Law Judge properly relied on the findings of the state agency reviewers that plaintiff could meet the basic mental demands of work on a sustained basis. *Id.* at 14. The Commissioner asserts that these findings are consistent with the objective findings of record as well as with plaintiff's activities, including school, weekly Special Olympics events, household chores, video games, and caring for his pets. *Id.* Accordingly, the Commissioner concludes that the Law Judge's decision is supported by substantial evidence and should be affirmed.

The key question here is whether the evidence establishes that plaintiff can work on a sustained basis without regular supervision. Ms. Peterson, plaintiff's rehabilitation counselor, testified that plaintiff would need supervision from a job coach to keep him on task. (R. 37-39.) An assessment of this evidence is critical because, as plaintiff has pointed out, the VE testified that there are no jobs available to a person with plaintiff's experience, abilities, and limitations if he requires assistance on a regular basis from a job coach or someone who would be present on the job to help him stay on task. (R. 46-47.) The Law Judge even acknowledged that, "All right, so that's where my issue is. Can he stay on task." (R. 47.) However, the Law Judge scarcely addressed in his decision the VE's testimony in response to questions related to plaintiff's need for supervision. Certainly this was because in reaching his conclusion about plaintiff's RFC, the Law Judge assigned no weight to Ms. Peterson's testimony, describing it, instead, as inconsistent

7

with the other records in the file and with plaintiff's daily activities. (R. 19.) Substantial evidentiary support for his credibility assessment of Peterson, as well as for that of the other testimony and evidence in the case, is undermined by the clarity with which plaintiff established that he would have difficulty maintaining gainful employment due to his distractibility and lack of ability to stay on task without supervision.

It appears to the undersigned that the Law Judge mischaracterized some and ignored other evidence in the record in arriving at his conclusion about the weight given to Ms. Peterson's opinion. The Law Judge indicates that plaintiff worked full time for a summer at Shenandoah National Park, cleaning and painting trials. (R. 17.) However, the record shows that this job actually was part time, untimed work under constant supervision by a job coach. (R. 32-33, 38-39; Dkt. No. 19, at 9.) Plaintiff performed other work through his vocational training at the Woodrow Wilson Rehabilitation Center, though each job appears to have been performed under close supervision, in an effort to foster his work skills. (R. 311-320, 534.)

While the Law Judge relies on portions of plaintiff's school, treatment, and vocational records, there are other critical details he omits which provide a complete picture of plaintiff's vocational abilities and limitations. While in school, plaintiff was in both the Individualized Education Program ("IEP") and the Virginia Alternative Assessment Program ("VAAP"), in which he was identified as needing "repetition of material, small group instruction," "extensive, direct instruction," and "intensive, frequent, and individualized instruction in a variety of settings." (R. 286-287, 302.) Plaintiff performed well in the IEP and was identified as a hard worker, but his work remained under close supervision and with support, where material was adapted to his needs and assistance provided to achieve results. (R. 199, 271-272, 286-287.)

8

Even then, his teacher noted difficulties with distractibility. *Id.* Similarly, while the school's psychological evaluation noted positive interest and motivation and good attention, concentration, and energy levels, plaintiff completed the necessary tests only with the close supervision and support of the school psychologist, who noted plaintiff was of low to borderline intellectual ability and likely would benefit from the continued support of the IEP. (R. 322-325.) Further, the June 8, 2010 "Summary of Performance" from Page County Schools states that plaintiff needs small group instruction and material adapted to his level of ability. (R. 534.) According to the VE, the supervision and support plaintiff received in his IEP would not be available in the workplace to assist plaintiff in maintaining gainful employment.

It is true that the records from Woodrow Wilson Rehabilitation Center also reveal that plaintiff demonstrated training potential and several vocational strengths. (R. 311-313.) Here too, however, the Center's records clearly demonstrate that plaintiff experienced difficulty with his attention to tasks and with working independently, which both suggested the need for additional training courses and ruled out certain occupations. *Id.* Notably, plaintiff produced low scores when tested for "Initiative and Dependability" and "Attention to Detail/Quality Work." (R. 316.) Furthermore, a psychological evaluation from Woodrow Wilson revealed the difficulties plaintiff experienced with attention and concentration, noting that he would "profit" from immediate and consistent feedback on performance by supervisors. (R. 469, 470, 473.)

When reviewing the records from Woodrow Wilson, Sherry Smith, a transition coordinator at the Page County Schools, opined that plaintiff was employable. However, she further noted that he would require "long term, specialized training that focuses not only on trade related skills, but also basic work skill deficits and trade-related academics" in order to be

9

employed. (R. 416.) Similarly, the "Summary of Performance" from Page County Schools details that while plaintiff has made satisfactory progress in his vocational training, he was still in training, had difficulties following multi-stepped instructions and moving from one task to another without prompting, and was removed from the food service program at Woodrow Wilson because of his slow rate of task completion. (R. 534.)

Consistent with this evidence is that of Ms. Peterson. Peterson's testimony was that plaintiff could work, provided that he had a job coach, performed a repetitive job, and could work at a slow speed. (R. 36.) Peterson captured plaintiff's condition when she stated:

> And then he's going to have to have some supervision because his time- - he doesn't tell time and so from moving from one thing to another- - if he's told what to do, he can do it. But somebody's going to have to be around. So it's going to take a real specific setting for him to work. And a lot of your employers, you know, aren't to carve a job for him.
> ...
> But he's going to...have to be able to learn that job to do it independently, and we don't know if he can do that or not and stay on task like he's supposed to.

(R. 37-38.)

It appears to the undersigned that the Law Judge mischaracterized Peterson's evidence when he related that "she testified that she does not think he is physically or mentally able to work." The Law Judge essentially cherry-picked the record to find only those facts which supported his conclusions that her testimony lacked evidentiary support. As an example, the Law Judge summarized plaintiff's daily activities, which, along with other reports, revealed generally successful life skills. (R. 17-18, 202, 260-267, 275, 400-408, 475-479.) However, the functional assessments cited by the Law Judge to support his conclusions about plaintiff residual capacities also show that plaintiff needs close supervision to stay on task for many of those daily activities. (R. 260-267, 475-479.) It is also clear from Woodrow Wilson's records that there is a

significant distinction between plaintiff's level of functioning in residential/independent living and that which would be required in a vocational setting. (R. 311-320, 400-408.) The point is that, while evidence of plaintiff's daily activities may be considered, those activities in this case fall short of that which would be necessary for plaintiff to function in a vocational setting. Accordingly, plaintiff's daily activities, as cited in isolation by the Law Judge, do not provide substantial evidentiary support for his decision to discredit Peterson's testimony, or any of the other vocationally-relevant testimony in this case.

The undersigned acknowledges that Peterson is not an acceptable medical source, but she is, after all, a certified rehabilitation counselor with the Department of Rehabilitative Services who has worked with plaintiff on a monthly basis for years on his job training. Her area of expertise and extensive contact with plaintiff are factors that should have enhanced, rather than detracted from, the weight of her testimony. Certainly, t is the province of the Law Judge and Commissioner to weigh the evidence and resolve inconsistencies in the record. However, the Law Judge isolated only that evidence which could appear favorable to his ultimate conclusion, and disregarded the great bulk of the record evidence pertaining to the critical issue in this case, namely plaintiff's ability to stay on task without supervision. *See Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006). The Law Judge's conclusions about the weight of Peterson's evidence, as well as the balance of the credible and corroborated evidence concerning this critical vocational factor, fail to substantially support the Commissioner's decision. Accordingly, the Commissioner's final decision should be reversed and plaintiff should be granted the disability benefits claimed in this action.[8]

---

[8] Plaintiff's entitlement to continued disability benefits can be reviewed by the Commissioner over time. According to the vocationally-related evidence, it may be that, with additional training in work skills, plaintiff will become able to perform substantial gainful

11

Case 5:11-cv-00062-MFU-BWC Document 21 Filed 03/26/12 Page 11 of 12 Pageid#: 610

For all these reasons, it is RECOMMENDED that an Order enter DENYING the Commissioner's motion for summary judgment, GRANTING plaintiff's motion for summary judgment, REVERSING the Commissioner's final decision, ENTERING final judgment in favor of plaintiff and RECOMMITTING the case to the Commissioner for the payment of benefits.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
U.S. Magistrate Judge

Date: 3/26/2012

---

activity without on-site supervision to keep him on task. If he does, then he no longer would be entitled to receive benefits.